The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modification.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on 2 October 1998.
3. On 2 October 1998, defendant was self-insured with Sedgwick of the Carolinas as the Third-Party Administrator.
4. The parties stipulated after the hearing before the deputy commissioner that plaintiff's average weekly wage on 2 October 1998 was $215.05, yielding a compensation rate of $143.37 per week.
5. Plaintiff's medical records from Dr. Speros are admitted into evidence as Stipulated Exhibit #2. Dr. Ira Hardy's deposition is admitted into evidence, but no medical records were attached. None of Dr. Miller's records are admitted into evidence because the parties were unable to obtain them.
6. Industrial Commission Forms 18, 19, 61, 33 and 33R are made a part of the record.
7. The issues to be determined are whether plaintiff sustained a compensable injury arising out of and in the course of her employment with defendant-employer; and if so, to what benefits, if any, is she entitled. Defendant has further raised the issue of notice pursuant to N.C. GEN. STAT. § 97-22.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On 2 October 1998, plaintiff was fifty-four years old and employed by defendant-employer as a chore provider. The position required plaintiff to go to a person's home who was in need of personal care due to medical problems. This care included bathing, dressing and cooking. Plaintiff received training as a nurse's assistant from Beaufort Community College.
2. On 2 October 1998, plaintiff was performing her regular duties at a patient's home assisting with a bath. When plaintiff leaned over to wash the patient's feet and legs, she felt a burning pain in her lower back. Plaintiff was trying to work around the commode in a small bathroom. Plaintiff finished the day although still experiencing pain.
3. Following the incident of 2 October 1998, plaintiff rested over the weekend and returned to work on Monday, 5 October 1998.
4. Plaintiff reported to her supervisor, Pearlie Corbett, that she was experiencing back pain which arose 2 October 1998. Plaintiff also indicated she needed to see a doctor.
5. Plaintiff sought treatment first from Dr. Peacock, her gynecologist. When plaintiff's pain became more severe, Dr. Peacock referred plaintiff to Dr. George Miller.
6. Plaintiff was not happy with Dr. Miller and sought treatment from her regular medical doctor, Dr. Thomas Speros, who then referred her to Dr. Ira Hardy, II, a neurosurgeon.
7. Plaintiff first saw Dr. Hardy on 26 April 1999. Plaintiff informed Dr. Hardy that her back pain arose on 2 October 1998 while working and bathing a patient. Plaintiff explained that during the time between October 1998 and April 1999, her pain had progressed down both legs, with the left side worse than the right.
8. Plaintiff's 26 April 1999 neurological exam was basically normal with the exception of a flattening of the lumbosacral curve, indicative of chronic spasm. A lumbar myelogram showed lateral recessed stenosis on both sides at the L4-L5 level. It also revealed a bulging disk at the L3-L4 level.
9. After conservative treatment failed, on 3 June 1999 plaintiff underwent left L3-L4 and L4-L5 partial laminectomies, facetectomies and foramenotomies with excision of the protruded disc at both levels, as well as a decompression type laminectomy on the right side at the L4-L5 level. Dr. Hardy performed the surgery.
10. Post-surgery neurological exams revealed no objective motor or sensory deficit. On 12 July 1999 Dr. Hardy released plaintiff to ride and drive in a car, but no heavy lifting, pushing or pulling until she returned to the office in another six weeks. At the 11 August 1999 exam, plaintiff still had some discomfort in her legs. X-rays on 8 September 1999 showed some rotation of the spine but as of that date, plaintiff had reached maximum medical improvement neurologically with regard to her back.
11. The greater weight of the evidence supports a finding that plaintiff's back condition and resulting surgery were caused by the performance of her work duties on 2 October 1998. Although plaintiff already had some degeneration in her spine, the L3-L4 protruded disc more than likely occurred traumatically because it was an asymmetrical protrusion.
12. Dr. Hardy discharged plaintiff to return to work on 8 September 1999. Plaintiff has not searched for work or earned any wages since 14 October 1998, which was her last workday with defendant.
13. In September 1999, plaintiff saw Dr. Speros with Washington Family Medicine Center. Dr. Speros treated plaintiff for chronic back pain, depression, panic attacks and anxiety. There is insufficient evidence of record to relate plaintiff's depression, panic attacks or anxiety to plaintiff's work-related injury.
14. Plaintiff improved with medication prescribed by Dr. Speros. Plaintiff's last visit of record to Dr. Speros was 13 March 2000, at which time plaintiff felt better but still had some back pain. There is insufficient evidence of record that Dr. Speros kept plaintiff out of work.
15. At the time of hearing before the deputy commissioner, plaintiff had not searched for employment.
16. There is insufficient evidence of record from which to prove by the greater weight of the evidence that plaintiff has any disability or loss of wage earning capacity after 8 September 1999 as a result of the compensable injury.
17. The record is insufficient to determine whether plaintiff has any permanent partial disability to her back as a result of the 2 October 1998 work-related incident.
18. Defendant raises the issue of notice pursuant to N.C. GEN. STAT. § 97-22. The greater weight of the evidence is that plaintiff mentioned to some supervisor at defendant-employer that she received an injury at work on 2 October 1998. The Form 19 indicates plaintiff first let her supervisor know of an injury on 2 October 1998 and listed both Pearlie Corbett-Fields and Marilyn Worley as plaintiff's supervisors.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 2 October 1998 plaintiff sustained a compensable injury to her back arising out of and in the course of her employment with defendant-employer. N.C. GEN. STAT. § 97-2(6).
2. As a result of this compensable injury, plaintiff is entitled to temporary total disability at her compensation rate of $143.37 per week from 15 October 1998 through 8 September 1999 when she reached maximum medical improvement. N.C. GEN. STAT. § 97-29.
3. Plaintiff is entitled to have defendants provide all reasonably necessary medical treatment arising out of plaintiff's 2 October 1998 compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiff's period of disability. N.C. GEN. STAT. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay to plaintiff temporary total disability benefits at her compensation rate of $143.32 per week from 15 October 1998 through 8 September 1999. Those amounts have accrued and shall be payable in a lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury for as long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded plaintiff in paragraph 1 of this AWARD is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
4. The issue of plaintiff's permanent partial disability rating, if any, is RESERVED for decision pending further medical evaluation. In the event the parties are unable to stipulate as to the rating, the Full Commission retains jurisdiction over this matter.
5. Defendant shall pay the costs.
This the ___ day of October 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/________________ BERNADINE BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb